UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY SUE MACGREGOR,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:21-cv-00021 CKD SS<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have consented to magistrate judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1967, worked as a cashier/stocker at a grocery store from 1998 to 2016. AT 21. She applied on for DIB on September 6, 2017, alleging disability beginning October 1, 2016. Administrative Transcript ("AT") 15, 278. Plaintiff alleged she was unable to work due to fibromyalgia, right shoulder impairment, and chronic tendonitis. AT 51. At the hearing on her

application, plaintiff testified that she stopped working due to pain, difficulties with concentration and memory, fatigue, and headaches. AT 33-34. In a decision dated May 27, 2020, the ALJ determined that plaintiff was not disabled.[1] AT 15-22. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2016, the alleged onset date.
>
> 3. The claimant has the following severe impairments: fibromyalgia, right shoulder arthropathy and chronic tendonitis.
>
> 4. The claimant does not have an impairment or combination of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except the claimant can frequently climb ramps or stairs and occasionally climb ladders, ropes or scaffolds; the claimant can frequently crawl; and the claimant can frequently reach overhead with the right upper extremity.

6. The claimant is capable of performing past relevant work as a cashier/stocker (DOT 290.477-014, light, SVP 3). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2016 through the date of this decision.

AT 17-22.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the medical opinions; and (2) the ALJ erred in discounting plaintiff's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A.  Medical Opinions

Plaintiff asserts that the ALJ erred in finding the opinions of treating physician Dr. Ian Pulliam "not persuasive."  Plaintiff argues that the ALJ failed to meaningfully discuss evidence relevant to the factors of supportability and consistency in evaluating the opinions of Dr. Pulliam and two state agency medical consultants.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because Plaintiff filed her DIB application on September 16, 2017, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and

consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

Here, the ALJ considered opinions by three physicians. State agency consultants Dr. Brian Harper and Dr. P. Frye reviewed plaintiff's medical records[2] and found she could perform a range of medium-exertional work. AT 57-60, 69-72. The ALJ found these opinions "partially persuasive," concluding that "signs of reduced range of motion and motor strength deficits on examination and occasional symptoms of fibromyalgia are more consistent with the claimant working at the light exertional level." AT 21.

Dr. Ian Pulliam was plaintiff's treating doctor. In August 2018, he completed a fibromyalgia questionnaire in which he stated that he had seen plaintiff monthly for 4-5 years. AT 321. Dr. Pulliam found that plaintiff met the 2010 American College of Rheumatology (ACR) Criteria for Fibromyalgia[3], listing her symptoms or co-occurring conditions as: difficulty

---

[2] Dr. Harper reviewed plaintiff's medical history in December 2018, and Dr. Frye in April 2019, so their opinions did not account for subsequent medical findings.

[3] As the Ninth Circuit explained, the Social Security Administration recognizes two methods for diagnosing fibromyalgia: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria") and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). Social Security Ruling ("SSR") 12-2P at 2, available at 77 Fed. Reg. 43,640 (July 25, 2012). Under the 1990 Criteria:

> a person suffers from fibromyalgia if: (1) she has widespread joint pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body;

thinking, fibro fog, depression, dizziness, fatigue, insomnia, headache, heartburn, muscle weakness, numbness/tingling, and sun sensitivity. AT 322. He indicated that she had a history of widespread pain that had persisted for at least three months, and at least 11 positive tender points, consistent with the 1990 Criteria. T 322. Dr. Pulliam noted that plaintiff had chronic widespread pain throughout her body, and that she experienced pain "daily or most days," aggravated by activity and stress. AT 324. He noted that her ongoing symptoms were expected to last at least 12 months and that she was not a malingerer. AT 321.

Dr. Pulliam opined that, in an 8-hour workday, plaintiff could sit for less than 1 hour, stand and/or walk less than 1 hour, and must get up every 30 minutes when sitting and move around for 30 minutes. AT 324. He opined that her symptoms were likely to increase in a competitive work environment. AT 325. He opined that she had limitations on lifting, carrying, grasping, turning/twisting objects, and using her hands/fingers for fine manipulations. AT 324. Dr. Pulliam further opined that plaintiff would need to take unscheduled rest breaks at unpredictable intervals and would be absent from work more than three times per month as a result of her impairments or treatment. AT 325.

In March 2020, Dr. Pulliam completed a second fibromyalgia questionnaire, stating that plaintiff could perform a reduced range of sedentary work. AT 821-26. He reported treating plaintiff for fibromyalgia as well as right shoulder impingement status post-surgery. AT 821. He

---

> and (3) there is evidence that other disorders are not accounting for the pain.

Truong v. Berryhill, 774 Fed. Appx. 381, 382-383 (9th Cir. 2019) (unpublished) (quoting Revels v. Berryhill, 874 F.3d 648, 656–57 (9th Cir. 2017), SSR 12-2P at 2–3)). Under the 2010 Criteria:

> a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestation of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

Revels, 874 F.3d at 657 (quoting SSR 12-2P at 3). Notably, "diagnosis of fibromyalgia does not rely on X-rays or MRIs." Id.

opined that plaintiff's condition continued to meet the 1990 and 2010 ACR criteria for fibromyalgia. AT 822. Dr. Pulliam found plaintiff to have similar symptoms and limitations as in his 2018 opinion, noting that the limitations detailed in the report had been present since October 1, 2016. AT 826. He again opined that plaintiff would need to take unscheduled rest breaks at unpredictable intervals and would miss more than three days of work per month due to her impairments or treatment. AT 825.

The ALJ discussed Dr. Pulliam's opinion(s) as follows:

> [Dr. Pulliam] completed a fibromyalgia questionnaire in March 2020 that opined the following: the claimant can stand, walk or sit for two hours in an eight hour workday; she can occasionally lift/carry 10-20 pounds and frequently lift/carry up to 10 pounds; she can occasionally perform manipulative activities; and she will need to take unscheduled breaks to rest at unpredictable intervals and would miss more than three days of work per month due to her impairments or treatment.
>
> This opinion is not persuasive. The opinion is not supported by Dr. Pulliam's own clinical examination findings documenting generally intact musculoskeletal and neurological functioning, other than some indications of diffuse tenderness. Additionally, the opinion is not consistent with the claimant's noted improvement after right shoulder arthroscopy surgery and unremarkable updated diagnostic imaging of the right shoulder.

AT 21 (record citations omitted).

First, the ALJ does not cite or refer to Dr. Pulliam's 2018 opinion at all, though it was issued during the alleged period of disability. The ALJ must consider all medical opinion evidence, and "[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." Garrison v. Colvin, 759 F.3d 995 at 1012 (9th Cir. 2014). The fact that Dr. Pulliam's assessments of plaintiff's fibromyalgia-related limitations were very similar in 2018 and 2020 should have factored into the ALJ's "consistency" analysis, at least in passing.

Second, also regarding the key factor of consistency, the ALJ limits his discussion of this issue to plaintiff's right shoulder impairment. The decision is completely silent on whether Dr. Pulliam's two opinions focused on fibromyalgia were "consistent with evidence from other

medical sources and non-medical sources, including the claimants themselves." See 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). Yet, the fibromyalgia-related limitations opined in Dr. Pulliam's opinions would have rendered plaintiff disabled whether her right shoulder was impaired or not. See AT 46, 48 (vocational expert testimony that, if plaintiff were limited to sedentary work and/or was frequently off task or absent, no work would be available and she would be found disabled). The ALJ's cursory and incomplete discussion of the consistency factor makes his rejection of Dr. Pulliam's opinions reversible error. See Titus L. S. v. Saul, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (holding court "must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to the physicians' opinions and whether the reasons were supported by substantial evidence"). Plaintiff is entitled to summary judgment on this basis.[4]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir.

---

[4] The undersigned does not reach the remaining claims.

2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

      Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

      For the reasons stated herein, IT IS HEREBY ORDERED that:

      1. Plaintiff's motion for summary judgment (ECF No. 14) be granted;

      2. The Commissioner's cross-motion to remand (ECF No. 17) be denied;

      3. Judgment be entered for the Plaintiff; and

      4. This matter be remanded for further proceedings consistent with the above.

Dated: August 31, 2022

                                              CAROLYN K. DELANEY
                                              UNITED STATES MAGISTRATE JUDGE

2/macgregor0021.dib.ckd